# Kittanning Insurance Company *versus* O'Neill.

1. Many papers, given in evidence generally, may, in the discretion of the court, be sent out with the jury.

2. Proofs of loss, made out by the insured and admitted in evidence for the purpose of showing that the requirements of the policy in regard to the same have been complied with, are for the court, who must judge of their sufficiency for that purpose. Being *ex parte* statements of the insured, they cannot be given in evidence for the jury, still less will they be permitted to be sent out with them.

October 13th, 1885. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas of *Cambria county:* Of October and November Term 1885, No. 105.

Covenant, by John P. O'Neill against the Kittanning In-

surance Company upon a policy of insurance against fire, issued to plaintiff by defendant company. Plea, *non infregit conventionem.*

On the trial, before JOHNSTON, P. J., the following facts appeared: On October 2d, 1883, the plaintiff effected an insurance with defendant company of $2,000 upon his dwelling house, slaughter house and the contents thereof. On October 6th, 1883, four days later, the property insured was totally destroyed by fire. On October 26th, the following proofs of loss were served upon the company :

"No. of Policy, 21,451.                    Amount, $2,000.00.

"*To the Kittanning Insurance Company, of Kittanning, Penn'a :*

"By your policy of insurance, No. 21,451, dated September 21st, 1883, and continued to the 21st day of September, 1886, you insured John P. O'Neill against loss and damage by fire to the amount of two thousand dollars, according to the terms and conditions printed in said policy, the written portion being as follows, viz.:

"Two Thousand Dollars.

"665.00 on his household furniture ; $100.00 on his wearing apparel ; $25.00 on his silver plate ; $10.00 on his printed books, pictures ; $50.00 on his sewing machine ; $150.00 on his seven beds and bedding (being $21$\frac{3}{7}$ on each), while contained in a two-story frame dwelling house ; $1,000.00 on his plank frame building, 18$\frac{1}{2}$ by 41$\frac{1}{2}$ feet, occupied as ice house, slaughter house and hog pen—all occupied by assured, and situate on north side of Penn'a R. R., in Washington township, Pa. It is understood that no steam or fire is used in slaughter building.

"Also, there was no other insurance on the property.

"That the actual cash value of the property, so insured, amounted to the sum of three thousand four hundred and eighty dollars at the time immediately preceding the fire, as will appear by the annexed schedule. marked 'A,' showing a full and accurate description of each kind of property, and the value of the same, with damage or loss on each stated separately.

"That the property insured belonged to John P. O'Neill, and that no other person had any interest in said property or any part thereof.

"That the building insured, or containing the property destroyed or damaged, was occupied in its several parts by the parties hereinafter named, and for the following purposes, to wit:

"The building insured was used by John P. O'Neill as ice house, slaughter house and hog pen ; the household furniture, wearing apparel, silver plate, printed books, pictures, sewing

machine and seven beds and bedding, being in a two-story frame house, occupied as dwelling house by John P. O'Neill, and for no other purpose whatever.

"That on the sixth day of October, A. D. 1883, a fire occurred, by which the property insured was injured or destroyed to the amount of three thousand four hundred and eighty dollars, as set forth in the statement and the several schedules and papers hereunto annexed, which the deponent declares to be a just, true and faithful account of his loss, as he has been able to ascertain the same.

"And the insured claims of the Kittanning Insurance Company the sum of two thousand dollars, as follows:

$  665 on his household furniture.
   100 on his wearing apparel.
    25 on his silver plate.
    10 on his books and pictures.
    50 on his sewing machine.
   150 on seven beds and bedding.
1,000 on building used as ice house, slaughter house and hog
———    pen.
$2,000—Total amount claimed.

"That the fire originated from some cause unknown about half-past three o'clock in the morning. The said fire did not originate by any act, design or procurement on his part, or in consequence of any fraud or evil practice done or suffered by him; that nothing has been done by or with his privity or consent to violate the conditions of the policy or render it void.

"Witness my hand at Lilly, this 26th day of October, 1883.

                "JOHN P. O'NEILL."

The above notice was duly sworn to, and attached to the same was the following:

"SCHEDULE A.

| "Property Insured. | Value. | Damage. | Insured. |
| --- | --- | --- | --- |
| "Furniture—chairs, tables, looking glasses, lounges, sofas, carpet, clocks, bureaus, desks, wardrobes, cupboards, stoves, &c., &c., . . . . . . . | $1,000.00 | $1,000.00 | $   665.00 |
| "Wearing apparel, . . . | 300.00 | 300.00 | 100.00 |
| "Silver Plate, . . . . | 40.00 | 40.00 | 25.00 |
| "Books and Pictures, . . | 50.00 | 50.00 | 10.00 |
| "Sewing Machine, . . . | 90.00 | 90.00 | 50.00 |
| "Seven Beds and Bedding. | 200.00 | 200.00 | 150.00 |
| "Ice and Slaughter House, | 1,800.00 | 1,800.00 | 1,000.00 |
| "Totals, . . . . . | $3,480.00 | $3,480.00 | $2,000.00 |

"ALTOONA, PA., October 26th, 1883.

" Received the within notice this day with instructions to forward same to company—that is, Kittanning Insurance Company, of Kittanning, Armstrong county, Pa.

"S. C. GOLDEN, *Agent.*"

The company then, in pursuance of one of the conditions of the policy, demanded that the value of the property, destroyed should be assessed by appraisers.

In pursuance of this demand the assured selected one appraiser and the company named one. These appraisers subsequently met at the house of the assured, a short distance from where the loss occurred. O'Neill gave them a description of the property embraced in the policy, but the appraisers failed to agree as to the value at their first meeting. They adjourned to meet at such other time and place as they might subsequently agree upon ; but O'Neill, without waiting and without making further effort in that direction, brought suit. On the trial the plaintiff gave in evidence the proofs of loss, which he served on the company, to show that the conditions of the policy, which requires the assured to furnish such statement within a specified time after the fire, had been complied with as a condition precedent to the right of action.

At the close of the trial, when the jury was about to retire, plaintiff's counsel proposed to send these proofs of loss out with the jury. This was objected to by defendant's counsel, but the objection was overruled and the proofs of loss were sent out with the jury.

Verdict for plaintiff for $1,800 and judgment thereon. Defendant then took this writ, assigning for error the action of the court in sending out with the jury plaintiff's proofs and schedule of alleged loss.

*Hugh W. Weir ( William H. Sechler* with him), for plaintiff in error.—The sole question here is, whether it was error to send out with the jury the proofs of loss. The proofs were only offered for the purpose of showing that the terms of the policy, requiring proofs of loss within a given time, had been complied with. By reference to these proofs it will be observed that they consist of an *ex parte* affidavit and statement of the plaintiff himself, and the certificate of a justice of the peace, as to the description and value of the property destroyed and the *bona fides* of the loss. The court gave the jury no instructions as to the purpose or effect of these *ex parte* affidavits and statements. They were sent out with the jury for their inspection and examination without qualification or restriction. In view of this, it cannot be doubted but that the jury read

and considered them as competent evidence in making up their verdict as to the value of the property. This was prejudicial to the defendant and we think contrary to well settled law upon the subject in this and many of the other states of the Union. Com'th Ins. Co. *v.* Sennett, 5 Wright, 161; Lycoming Ins. Co. *v.* Schreffler, 6 Wright, 188; 8 Id., 269.

*John P. Linton*, for defendant in error.—

[MERCUR, C. J.—This evidence was offered for a specific purpose. Did you offer it for any other purpose? *Ans.* No, sir, but it became evidence afterwards.]

"A jury may take out with them any writings that have been given in evidence without distinction as to sealed or unsealed, except the depositions of witnesses:" Alexander *v.* Jameson, 5 Binney, 238. In illustration and accordance with this rule it has been held that "records" of court may be sent out: Hendel *v.* Berks & Dauphin Turnpike Road, 16 S. & R., 92. Also information taken before a magistrate: Seibert *v.* Price, 5 W. & S., 438. Patent, title deeds, drafts, and other papers given in evidence at trial: Riddlesburg Coal Co. *v.* Rogers, 15 Smith, 416. Letters, checks, due-bills, application for insurance papers, etc.: Udderzook *v.* Commonwealth, 26 Smith, 354. Claim filed with bill of particulars in mechanics' lien case: Odd Fellows' Hall *v.* Masser, 12 Harris, 507. Sending papers to jury is a matter of sound discretion of the court, and not a subject of error: Spence *v.* Spence, 4 Watts, 165; O'Hara *v.* Richardson, 10 Wright, 389; Little Schuylkill Navigation Co. *v.* Richards, 7 Smith, 148.

None of the cases, cited by plaintiff in error, decide that merely sending out proof of loss, properly in evidence, was error calling for reversal. Erroneous instructions as to their effect was the cause for reversal.

Chief Justice MERCUR delivered the opinion of the court, November 2d, 1885.

The specification of error is to the court sending out with the jury under exception, the paper containing the proofs of loss, and schedule attached.

It is true it has been ruled that in the sound discretion of the court, many papers that have been given in evidence, may be sent out with the jury. This paper however had not been given in evidence generally. It was admitted solely for the purpose of showing that proofs of loss had been furnished as required by the policy. It was therefore for the purpose of showing a condition precedent to a right of action. Being in writing the question of sufficiency for that purpose is to be decided by the court: Commonwealth Insurance Company *v.*

[Ins. Co. v. Adams.]

Sennett, *et al.*, 5 Wright, 161. They are not even *prima facie* evidence to the jury of the quantity and quality of the goods lost: Id. The insured cannot thus prove the particulars or extent of his loss by his own *ex parte* statement even under oath. The correctness of this ruling is affirmed in Lycoming Insurance Company *v.* Schreffler, 6 Wright, 188. Nor did the fact that the statement of loss was called for by the company make it evidence for the insured: Id. Nor is the report of loss made out by the agent of the company with the affidavit of the insured appended, evidence to go to the jury: Same *v.* Same, 8 Wright, 269. The correctness of excluding such evidence from the jury has been recognized in other states: Phœnix Insurance Company *v.* Lawrence, *et al.*, 4 Metc., (Ky.) 9; Lafayette, Bloomington & Mississippi R. R. Co. *v.* Winslow, *et al.*, 66 Ill., 219.

The statement sent out in the present case contains averments exonerating the insured from all improper conduct, and specifies the amount of his loss and damages. It was clearly improper to send such papers out with the jurors to be examined by them in their deliberations. It would be error to permit the insured to give them in evidence to the jury on the trial, and the error was greater in permitting the jury to consider the several averments therein without their having been given in evidence.

Judgment reversed and a *venire facias de novo* awarded.