Bobereski, Adm. v. Ins. Co. of the State of Pennsylvania, Appellant.

586

Argued March 8, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Horace Michener Schell,* and with him *R. S. Hemingway,* for appellant, cited: Standard Sewing Machine Co. v. Royal Insurance Co., Ltd., 201 Pa. 645; Rosenberg v. Fireman's Fund Insurance, 209 Pa. 336; Gratz v. Insurance Company of North America, 282 Pa. 224; Cole Bros. v. Fire Assurance Co., 188 Pa. 345.

*E. J. Mullen,* and with him *G. W. Moon,* for appellee, cited: Pennsylvania Fire Insurance Co. v. Dougherty, 102 Pa. 568; First National Bank of Mildred v. Home Insurance Co., 274 Pa. 129.

Opinion by Keller, J., July 14, 1932:

This was an action on a policy of fire insurance. It was tried twice and twice appealed.

On the first appeal, to the Supreme Court, (Fedas v. Ins. Co. of State of Pa., 300 Pa. 555), the questions before the appellate court were (1) whether the insurance company had waived the furnishing of technical proofs of loss; and (2) the measure of damages where there has been a partial destruction. It appears from the report of that case that at the first trial the insured had given evidence that she "met the adjuster [of the insurance company] who stated to her that the company would not pay the loss because she was criminally responsible for the fire." The Supreme Court held that denial of liability, on other grounds than failure to file proof of loss, constituted a waiver of the requirement to furnish formal proof of loss within sixty days.

At the second trial the plaintiff gave no evidence of any statement or representation by the insurance company's adjuster that it would not pay the loss because she was criminally responsible for the fire. On the contrary she testified that at the only meeting which she had with the adjuster, Bentley, which occurred about two weeks after the fire and two weeks before her arrest on complaint of the fire marshal for conspiracy to burn her dwelling with intent to defraud an insurance company, he had told her that the informal proofs of loss which she gave him at the time were all right; that the company was satisfied to pay her and would pay her; but that they would have to wait a week or two; that he wanted to know what Brosky, the fire marshal, was going to do; that Brosky said she knew something about the fire. "The company is satisfied to pay, but I have to wait a little bit ......I wait until next week; one week more; then the company come and settle with me."

This, if believed, constituted just as effective a waiver of the requirement of formal proof of loss, as the alleged denial of responsibility by the company at the former trial, for as was said by Mr. Justice KEP-

HART, speaking for the court, when the case was before it, "Waiver may be inferred from any act evidencing a recognition of liability, or from a denial of liability on other grounds than failure to file proof of loss" (p. 559).

On this appeal, accordingly, the appellant, the insurance company, raises no question as to the correctness of the rulings of the lower court relative to the matters which were passed upon by the Supreme Court in the former appeal.

The statement of questions involved raises four points to be passed upon by us. We shall discuss them in the following order:

(1) We think, following the decision in Fedas v. Ins. Co. of State of Pa., supra, that the waiver of the requirement to file a proof of loss may be established by the testimony of one witness, the insured, even though it is contradicted by two witnesses, the company's agent and adjuster. It was permitted in that case. We are not here construing the policy of insurance nor reforming an instrument in writing. The waiver of the furnishing of formal proofs of loss by an authorized adjuster of the company is a question of fact to be determined by the jury. The courts have held that a waiver may be inferred from any act evidencing a recognition of liability or a denial of liabilty on some other ground. It may be shown by parol in express language, or may appear by necessary implication: Fedas v. Ins. Co. of State of Pa., supra. Waiver is a question of fact: Phila. Auto F. Co. v. Agric. Ins. Co., 102 Pa. Superior Ct. 1, and the cases there cited. It was the jury's function to decide whether they would accept plaintiff's story or that of the agent and the adjuster.

(2) Was there sufficient proof as to the cost of repairing the building? The policy limits the liability of the defendant company to the cost of repair or replacement with material of like kind and quality. The

insured produced witnesses who testified as to the cost of the material and labor necessary to repair the building, but they had not made a careful survey of the kind of material that had been used in the original construction of the building and were not able to state the kind, grade and quality of all the lumber of which it had been built. As to some of it they figured on the type of material that ordinarily would be used in making such repairs. The court allowed their testimony to be submitted to the jury. This was supplemented by the evidence of a man who had worked on the construction of the house and was generally familiar with its materials. Of course, as to the parts destroyed by fire it is not always possible to state the exact material burnt or the precise cost of replacement; the kind and quality of the lumber must be approximated as nearly as may be, and allowance made for replacement of old material by new: Fedas v. Ins. Co. of State of Pa., supra, p. 563; this the insurance company in making its own estimate had to do. But as respects the part not destroyed by fire, inasmuch as the building had not been repaired, but was in substantially the same condition as it was after its partial combustion, the witnesses could have ascertained the kind of materials used in its erection. As it was, their testimony on this score was lacking in a material feature. In order to ascertain the cost of replacing the property. in, or as nearly as possible to, its condition at the date of the fire, the kind and quality of material entering into the original construction should, whenever possible, be stated and the cost of a substantial duplication be shown. However, this discussion is unnecessary because the defendant submitted evidence as to what the cost of the reconstruction would be and the jury adopted that amount and found for the plaintiff for that sum. The admission of the testimony did the defendant no harm.

(3) Both the Supreme Court and this court have repeatedly ruled that proofs of loss are not substantive evidence for the plaintiff, and that no part of them can be admitted for the purpose of establishing the amount of damages to be allowed the plaintiff in case of recovery. They are admitted in evidence to show a compliance with the requirements of the policy in that respect, but no part of them is to be read to the jury, at least, on behalf of the plaintiff: Rosenberg v. Fireman's Fund Ins. Co., 209 Pa. 336, 337; Baldi v. Metropolitan Life Ins. Co., 30 Pa. Superior Ct. 213, 221; Kittanning Ins. Co. v. O'Neill, 110 Pa. 548, 553; Cole v. Manchester Fire Ins. Co., 188 Pa. 345, 358; Lattavo v. Va. Fire Ins. Co., 88 Pa. Superior Ct. 433, 435. It was wholly immaterial, so far as proving the plaintiff's case was concerned, what amount she had claimed in her proofs of loss; she could recover only on the basis of the damages proved by her on the trial. Hence the court should not have allowed the plaintiff to read to the jury the amount of damages claimed in the proof of loss; but as the verdict of the jury adopted the figure fixed by the defendant's witness as the cost of replacing the building, we are satisfied its admission did the defendant no harm and would not reverse on that account.

(4) The insurance company's chief defense at the trial was that the plaintiff was concerned in the burning of the insured property. The fire was unquestionably of incendiary origin. The building was unoccupied at the time of the fire and had been for two or three weeks before it, and had had no artificial heat or light in it since the tenant's removal. The house had been set on fire in two places, one on the first floor at the stairs in the back of the house, the other in the front of the second story. Three empty five gallon kerosene cans were found in the house, and the floors had been soaked with kerosene at the points where the

fires had been started, and loose paper was found lying about near. The plaintiff, who lived at Nanticoke, (the insured building was in Berwick), had come to Berwick a few days before the fire and tacked old cloths and papers inside, over all the windows, so that nothing inside could be seen from the outside; and early on the morning of the fire was again in Berwick, before any news of the fire had been sent her.

About four weeks after the fire, which occurred on April 27, 1927, she had been arrested by the fire marshal for conspiracy to burn her house with intent to defraud the insurance company, and had been held to bail for court. The insurance company defendant had not been instrumental in causing her arrest, nor was it concerned in the prosecution. A true bill was obtained on September 13, 1927, but on September 19, 1927, the district attorney, by leave of court, entered a nol. pros. on the ground that the evidence given him by the prosecutor, Brosky, the fire marshal, ''does not in any way identify by name or description the defendant's co-conspirator and therefore conviction cannot be obtained.''

The plaintiff, as part of her case in chief, offered the record of this criminal case in evidence and over the objection of the defendant, it was admitted. It was not competent evidence for any purpose.

Our Supreme Court has declared the general rule to be that the judgment and record of a criminal case is not admissible in evidence on the trial of a civil action involving the same matter. In Hutchinson v. Bank of Wheeling, 41 Pa. 42, 45, which was an action of trover brought for the recovery of money which the defendant was accused of having stolen but had been acquitted on the criminal charge, the Supreme Court, speaking through Chief Justice Lowrie, said: ''The private wrong was not merged in the public one, nor is the prosecution intended to supersede the pri-

vate action. Their purposes are entirely different. The person wronged is not chargeable with the conduct of the prosecution and therefore not affected by an acquittal." And in Bennett v. Fulmer, 49 Pa. 155, 161, an action of trespass quare clausum fregit, the Supreme Court (Mr. Justice Thompson) said: "The third error assigned is to the rejection of the record of the criminal prosecution against the defendants for forcible entry and detainer. It was not evidence on the issue involved in this suit. It was between different parties." See also Wingrove v. Central Penna. Traction Co., 237 Pa. 549, 555; Summers v. Brewing Co., 143 Pa. 114, 121; Porter v. Seiler, 23 Pa. 424, 431; Com. v. Colacino, 89 Pa. Superior Ct. 269, 271. In Gartner's Est., 94 Pa. Superior Ct. 45, 49, 50, our Brother Trexler, now President Judge, speaking for this court, recognized this rule in the following language: "Moreover, judgments in criminal cases where the State is prosecutor, are generally held inadmissible to establish the facts of a civil case, and vice versa." The court below was probably misled by the misstatement—unintentional, of course,—of counsel for plaintiff as to her evidence on this trial, made in answer to the objection of defendant's counsel to the admission of this record, in reciting the purpose for which the offer was made, as follows: ......"for the purpose of showing how that case was disposed of, and as corroborating the statement and testimony of Mary Fedas, this plaintiff, that she was informed by H. E. Bentley, the adjuster of the defendant company, at the meeting in Wilkes-Barre in May, 1927, that the company would not adjust this claim until the criminal case was disposed of." Whatever may have been averred in the plaintiff's statement and whatever she may have testified to on the first trial, she had on this trial given no such evidence. She had seen Bentley but once, and that was at least two weeks before the

criminal prosecution was begun by the fire marshal. There was no criminal case to dispose of when she saw him. Her story, as before stated, was that Bentley had told her that the informal proofs of loss she had shown him were all right; that the company was satisfied to pay her and would pay her, but that they would have to wait a week or two; that he wanted to know what Brosky the fire marshal was going to do; and then in a week more, the company would come and settle with her. The record of the criminal case and the nol. pros. entered in it by the district attorney had no relevance whatever to the issues of fact raised by the plaintiff's evidence. Even if, on this trial, the evidence had been as stated by plaintiff's counsel, and the waiver of furnishing formal proofs of loss within sixty days had been based on a *denial* of liability by the defendant, instead of on a *recognition* of such liability, the utmost that would have been admissible in evidence with reference to the criminal case would have been the fact that it *was* disposed of prior to the furnishing of such formal proofs, not *how* it was disposed of, and the record of the entry of nol. pros. would not have been admissible in evidence.

It is urged, however, that as the disposition of the case was a nol. pros. and not an acquittal, the defendant was not hurt by the admission of the record in evidence. We are not satisfied of its harmlessness. Laymen are not apt to make much distinction between a discharge by acquittal of a jury and a discharge by nol. pros. entered by the district attorney with leave of court, because the evidence was insufficient to convict. Even the law gives them for some purposes the same effect. The entry of a nol. pros. in a criminal prosecution is such an *ending* of the prosecution as to entitle the plaintiff to maintain an action for malicious prosecution: Murphy v. Moore, 11 Atl. 665, 9 Sadler 64. The average juryman is not apt to con-

sider that the parties to the criminal prosecution and the civil action were not the same; that the plaintiff or defendant, as the case may be, in the civil action had no control over the criminal case; that the degree of proof in the two issues was not the same; that in the criminal case the evidence of guilt of the defendant must be proved beyond a reasonable doubt, while in the civil suit it need only be established by a preponderance of the evidence: Somerset County Mut. Fire Ins. Co. v. Usaw, 112 Pa. 80, 89 (Trunkey, J.); McMillen v. Steele, 275 Pa. 584, 586; Stehle v. Jaeger Automotive Machine Co., 225 Pa. 348, 351; Schmidt v. Ins. Co., 1 Gray (Mass.) 529; Kane v. Ins. Co., 10 Vroom (39 N. J. L.) 697; Floyd v. Paulton Coal Mining Co., 94 Pa. Superior Ct. 1, 5, 6. It is doubtful, whether after it was in evidence that the plaintiff had been discharged from criminal prosecution by the court, on motion of the district attorney for lack of evidence to convict, the defendant had a chance of convincing the jury that she was concerned in the burning of her property. It was entitled to the verdict of the jury on that point free from any impressions, convictions or beliefs raised by incompetent evidence.

Nor was this right affected by the circumstance that the defendant did not specially object to every attempt of the plaintiff to prove the fact of her arrest and what she was charged with. Defendant's counsel did object without avail the first time (p. 68-a); but the fact that incompetent, irrelevant and immaterial evidence may be introduced on a trial by one party, without objection from the other party, because he may deem it of no importance and harmless, does not prevent the latter from objecting to the further introduction and elaboration of such evidence when he is of opinion that it is both important and harmful. The principle of estoppel does not apply in such case.

The third assignment of error is sustained. The judgment is reversed and a new trial awarded.