840 A.2d 161

STATE FARM FIRE & CASUALTY CO.

v.

Damon Alfonzo CARTER.

No. 2384, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Dec. 29, 2003.

Paul M. Finamore (Brett A. Buckwalter, Niles, Barton & Wilmer, LLP on the brief), Baltimore, for Appellant.

Samuel M. Grant (William N. Butler, Howard, Butler & Melfa, PA on the brief), Towson, for Appellee.

Panel: HOLLANDER, SALMON, and BARBERA, JJ.

HOLLANDER, Judge.

This case is rooted in a contractual dispute between Damon A. Carter, appellee and cross-appellant, and his automobile insurer, State Farm Fire & Casualty Company ("State Farm"), appellant and cross-appellee. Although State Farm insured Carter's motor vehicle for theft, it refused to pay Carter's claim of loss arising from the alleged theft of his

automobile, because it considered the claim bogus. That decision prompted Carter to file suit against State Farm for breach of contract. A jury in the Circuit Court for Baltimore County found in favor of Carter, awarding him damages of $22,749.18.

At issue here is the ruling of the trial court allowing Carter to testify that criminal charges were brought against him with regard to his alleged loss, but that the charges were dismissed or "nolle prossed." On appeal, State Farm asks:

Whether the trial court committed reversible error in permitting the Appellee to introduce evidence regarding his *nolle pros.* on criminal charges stemming from the same occurrence underlying the present civil suit and/or abused its discretion by denying Appellant's request for mistrial and subsequent Motion for New Trial.

In his cross-appeal, Carter poses one issue:

Whether the trial court erred in declining to award costs, expenses, and attorney fees, and in holding that State Farm's defense was made with substantial justification, as State Farm never established a reason, in good faith, for denying cross-appellant's claim.

For the reasons stated below, we shall reverse and remand.

### FACTUAL SUMMARY [1]

Appellee claimed that he purchased a 1993 BMW 325i on August 27, 1998, for the sum of $14,000. He obtained a policy of insurance for the vehicle from State Farm. On November 17, 1998, Carter notified State Farm that the vehicle had been stolen. He also reported the theft to the police. According to Carter, the vehicle was stolen from the rear of his place of employment and was never recovered.

Several concerns surfaced during State Farm's investigation of appellee's claim. As a result, State Farm referred the

---

1. In view of the issues, we need not include a detailed summary of the parties' conflicting evidence pertaining to the legitimacy of appellee's insurance claim.

claim to its Special Investigative Unit. By letter of July 7, 1999, from Paul Holland to appellee, State Farm denied Carter's claim. Holland advised Carter that the investigation "revealed that no accidental loss has occurred as defined under ... this policy"; there were "material misrepresentations and concealments made by [appellee] following the loss," and appellee had refused "to cooperate with appellant," as required by the policy.

In the meantime, in March 1999, Carter was arrested and charged, *inter alia*, with insurance fraud in connection with the alleged theft of his vehicle. On December 6, 1999, the date set for Carter's criminal trial, the prosecutor entered a *nolle prosequi* ("nol pros") as to the criminal charges.

Thereafter, in September 2000, Carter sued State Farm for breach of contract.[2] State Farm asserted affirmative defenses in support of its denial of Carter's claim, consistent with the contentions advanced by Holland in his letter of July 7, 1999.

At the outset of the jury trial in October 2002, State Farm moved *in limine* to bar evidence of the criminal prosecution of appellee and the subsequent nol pros. State Farm argued that appellee should not be permitted to suggest to the jury that, because the State declined to prosecute him, this established that he did not engage in any wrongdoing with regard to his insurance claim. In effect, the court denied the motion, stating that it would "wait and see."

Carter was called as the first witness at trial. An employee since 1984 of Michael Jacobs Audio Visual Electronics in Baltimore City, Carter testified that he purchased the BMW from Jacobs for the sum of $14,000. Carter recalled that he borrowed the money from his mother and sister, and paid cash for the vehicle.

According to Carter, on the night of November 16, 1998, he left the BMW in the alley behind his place of employment,

---

**2.** Carter initially filed suit in the District Court for Baltimore County, but the case was removed to the Circuit Court for Baltimore County after appellant prayed a jury trial.

because he planned to install upgraded sound speakers the following day. The next morning, Carter discovered that the car was gone. He reported the theft to the police. In addition, he notified State Farm that the vehicle had been stolen.

During Carter's direct examination, Carter's attorney questioned him about an interview conducted by James Reichlin, a claims specialist in State Farm's Special Investigative Unit. The following testimony is in issue:

[APPELLEE'S ATTORNEY]: So [Mr. Reichlin] said that you were going to be charged with insurance fraud and that the police were on their way?

[APPELLEE]: Yes, he did.

[APPELLEE'S ATTORNEY]: Do you know who called the police?

[APPELLEE]: No, I don't.

[APPELLEE'S ATTORNEY]: Did there come a time when you, in fact, were charged?

[APPELLEE]: Yes, I was.

[APPELLEE'S ATTORNEY]: And were you charged in Baltimore City?

[APPELLEE]: Yes, I was.

[APPELLEE'S ATTORNEY]: And was there a disposition of this matter?

[APPELLEE]: Yes, there was.

[APPELLANT'S ATTORNEY]: Objection.

[THE COURT]: Overruled.

[APPELLEE'S ATTORNEY]: Was there a disposition for this matter set?

[APPELLEE]: Yes, there was.

[APPELLEE'S ATTORNEY]: And what happened?

[APPELLANT'S ATTORNEY]: Objection.

[THE COURT]: Overruled.

[APPELLEE]: *I went to court for it and got a nol process [sic].*

[APPELLEE'S ATTORNEY]: Case was dismissed?

[APPELLEE]: *Case was dismissed.*

[APPELLEE'S ATTORNEY]: No further questions, Your Honor.

* * *

[COUNSEL FOR STATE FARM]: Yes, Your Honor. May we approach quickly?

[THE COURT]: Yes.

(Bench conference on the record.)

[COUNSEL FOR STATE FARM]: Your Honor, for the record, at this point I would move for a mistrial based on the motion in limine that I filed, indicating that the testimony that [appellee's attorney] just elicited which he actually said, I think earlier, that he didn't intend to elicit is inadmissible under the cases and is attempting to mislead the jury as to the wrong standard of proof and the fact that a nol pros—I believe the testimony is unfairly prejudicial to State Farm, and I would move for a mistrial at this time.

[THE COURT]: You talk very quickly. I reviewed the motion in limine as well as the cases that are cited. I do not agree that the case stands necessarily for the propositions for which they were cited. I believe the testimony's probable in the circumstances, so the objection's overruled and the request for mistrial is denied.

(Emphasis added).

Michael Jacobs, appellee's employer, was called as a witness by State Farm. Jacobs testified that he purchased the vehicle in New York for $7,000. At the time, the vehicle was inoperative, had minor body damage, and there was mud in the interior. Moreover, Jacobs did not know the mileage at the time of purchase, because the car had no battery and the mileage display required electricity. Jacobs shipped the vehicle to Maryland for repair; the engine and transmission were replaced and the car was cleaned for the total sum of $7,000.

Jacobs testified that he sold the BMW to Carter for $14,000 in "cash." He also claimed that the mechanic had the vehicle inspected and showed him (Jacobs) the certificate. Jacobs stated that he had no reason to believe that the inspection was inadequate or fraudulent.

Reichlin, State Farm's claims specialist, testified that State Farm had previously insured the same vehicle in 1997, when it was involved in a mud slide in California. At that time, the vehicle was declared a total loss and was sold for salvage value. Reichlin claimed that State Farm became suspicious about appellee's claim for several reasons.

Reichlin noted that Carter made several inconsistent statements in regard to the vehicle. For example, Reichlin said that concerns arose when Carter tried to claim the loss of after-market stereo equipment that was allegedly in the BMW, because in the earliest days after the loss, Carter had not mentioned this equipment. State Farm also regarded as questionable the receipts Carter provided to State Farm for the equipment, because State Farm was unable to verify the existence of the company, "Wheel–A–Deal," from which Carter allegedly purchased the equipment. When State Farm went to the address on the receipts, it found a church at the location. Moreover, despite claiming that the faceplate to his after-market car stereo was not stolen, Carter refused to produce it for State Farm's inspection.

In addition, State Farm claimed that appellee failed to cooperate with State Farm, as required by the insurance policy. Among other things, Carter refused to produce the key to the vehicle, as well as financial information concerning his ability to purchase it. State Farm's investigation also generated concerns about whether the purported seller had legal title to the car on the date Carter claimed to have purchased it; the amount of the purchase price; the vehicle's mileage; and the validity of the inspection.

After the jury found in favor of Carter, he requested counsel fees pursuant to Rule 1–341. The court determined that "the defense set forth by [appellant] was made with

substantial justification and therefore, not made in bad faith." Accordingly, the court denied appellee's request.

We shall include additional facts in our discussion.

## DISCUSSION

Appellant contends that the court committed reversible error by allowing Carter to testify about the *nol pros* of the criminal charges "stemming from the same occurrence underlying the present civil action." According to State Farm, "[t]here is a strong likelihood that the evidence of the *nolle pros.* misled the jury to conclude that Appellee was innocent of the crime alleged."

State Farm maintains that the admission of evidence of the nol pros was irrelevant, misleading, and prejudicial. Recognizing that, ordinarily, an underlying criminal conviction is not admissible in a related civil suit, appellant insists that "the justification to exclude evidence of a *nolle pros.,* or even an acquittal, is more compelling than the rationale behind excluding convictions." In support of its position, State Farm points to the subjective nature of a prosecutor's decision to nol pros a case, and the distinct burdens of proof that apply in criminal and civil cases.

Preliminarily, we shall consider Carter's contention that State Farm waived its claim of error by failing to object to all questions regarding the criminal investigation and Carter's arrest. Appellee points to numerous places in the record where Carter, Detective James Burger, Ferdinand Greeff (the owner of an automobile body repair shop), and James Reichlin were questioned about various aspects of the investigation and arrest of Mr. Carter, without objection.

In light of the "extensive reference to [the] criminal prosecution," without objection from State Farm, Carter contends that State Farm's claim is not preserved. Appellee asserts:

State Farm does not explain, in its brief, why it objected to the mention of nolle pros, on a single occasion; yet allowed multiple references to pass, as to police investigation,

charges, State's Attorney Offices, etc. Plaintiff submits that State Farm should have consistently objected to all such references (many of which came from witnesses called by State Farm), if State Farm wishes to complain now that it suffered prejudice. Clearly, the jury was allowed to hear that criminal charges were brought against [appellee].... As State Farm failed to object to such multiple references, State Farm should be held to have waived objection.

■ In our view, appellant adequately challenged the admission of the evidence concerning the nol pros. As we noted, prior to trial appellant unsuccessfully moved *in limine* to bar appellee's testimony as to the arrest and nol pros. To be sure, when a party seeks a trial court's ruling on a motion *in limine*, the party must object to the admission of the evidence at the time it is actually offered at trial, in order to preserve the objection. *See Brown v. State*, 373 Md. 234, 242, 817 A.2d 241 (2003); *Reed v. State*, 353 Md. 628, 640, 728 A.2d 195 (1999) (requiring contemporaneous objection to the admissibility of evidence in order to preserve an issue for appellate review); Maryland Rule 2-517 ("An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived.").

Carter was called as the first witness in the case. When Carter was asked about the "disposition" of the charges against him, State Farm renewed the objection embodied in its motion *in limine*. The objection was overruled, however. Immediately thereafter, State Farm moved for a mistrial, which was denied.

Appellee seeks to broaden the narrow issue raised by State Farm. Appellant challenged below, as it does here, appellee's testimony that the charges against him were dismissed by the State. Carter has not referred us to any place in the record where State Farm failed to object to a question concerning the disposition of the criminal charges. State Farm's failure to object to questions posed by Carter's attorney regarding the criminal investigation or Carter's arrest does not defeat State

Farm's prompt and repeated objections to Carter's testimony about the nol pros.

■ In addition to his waiver claim, Carter contends that "no Maryland appellate case has ever held that mention of a prosecutor's nolle pros. is inadmissible in a subsequent civil action." Moreover, appellee argues that since a prior conviction is sometimes admissible in a related civil case, a nol pros ought to be admissible, since it "is no judgment at all, one way or the other." Because a "nolle pros is no conclusion at all," appellee asserts that it "would have less effect ... at a subsequent civil trial."

Further, Carter underscores that he was charged with giving a "false statement to police officer" and "insurance fraud," but that the underlying civil action did not involve a claim for damages arising from a false statement to a policeman or insurance fraud. Rather, he sued State Farm for breach of contract. Alternatively, appellee argues that any error was harmless.[3]

The parties' contentions require us to determine whether the trial court committed reversible error by admitting at a civil trial for breach of contract a nol pros entered in a prior criminal case that involved the same underlying conduct.

■ By way of analogy, we note that, ordinarily, "a criminal conviction is inadmissible to establish the truth of the facts upon which it is rendered in a civil action for damages arising from the offense for which the person is convicted." *Aetna Casualty & Surety Co. v. Kuhl*, 296 Md. 446, 450, 463 A.2d 822 (1983). In *Kuhl*, the Court of Appeals considered whether a conviction for assault and battery was admissible in a subsequent civil action arising out of the same incident. 246 Md. at 448, 229 A.2d 388. The insurer sought to introduce evidence of the convictions to show that the conduct was intentional,

---

**3.** Appellee also argues that appellant did not sustain "actual prejudice" as required by Maryland Code (1997), § 19–110 of the Insurance Article ("Ins. Art."). Ins. Art. § 19–110 pertains to liability insurance coverage; it has no relevance here.

because if the conduct was intentional it would defeat coverage of the occurrence under the insurer's policy of insurance. Concluding that the conviction was inadmissible, the Court explained in *Kuhl:*

"The reasons for this exclusion of the judgment in a criminal case as evidence of the plaintiff's claim against the traverser are various. There is a weighty difference in the parties, objects, issues, procedure, and results in the two proceedings with different rules with respect to the competency of the witnesses and the relevancy, materiality, and weight of the testimony. In a civil proceeding, the act complained of is the essential element, but in a criminal prosecution it is the intent with which the act is done."

*Id.* at 450–51, 463 A.2d 822 (citation omitted).

The Court continued:

[A] judgment of conviction in a criminal case is not admissible in a civil case as evidence of the facts upon which it is based. The parties to the criminal prosecution are different. The rules of evidence are different and the purposes and objects sought to be achieved are different.

*Id.* at 452, 463 A.2d 822. *See also Eisenhower v. Balto. Transit Co.,* 190 Md. 528, 538, 59 A.2d 313 (1948) (stating that, in an automobile tort action, evidence of a driver's criminal traffic conviction was "not competent evidence, to establish the truth of the facts upon which it has been rendered, in a civil action for damages occasioned by the offense of which the party stands convicted.").

On the other hand, there are instances in which a prior conviction may be admissible in a related civil suit. In *Eagan v. Calhoun,* 347 Md. 72, 86–87, 698 A.2d 1097 (1997), for example, which involved a wrongful death action, evidence of the husband's guilty plea to manslaughter of his wife was deemed admissible as a judicial admission that the defendant had committed the killing and that the killing constituted voluntary manslaughter. Nevertheless, the Court of Appeals noted that, ordinarily, an admission is not considered as conclusive evidence that the killing was non-accidental; it is

generally subject to rebuttal. *See also Cothran v. Brown,* 350 S.C. 352, 566 S.E.2d 548 (App.2002) (In a subsequent civil action for wrongful death brought against the man convicted of driving under the influence and reckless homicide, the court held that judicial estoppel applied to prevent the defendant from contradicting his previous guilty plea.).

Although there are reported Maryland decisions addressing the matter of whether or when prior *convictions* are admissible in related civil cases, we have found reported decisions concerning the admissibility of prior acquittals only in the context of cases in which the disposition of the prior criminal charges is an element of the subsequent civil cause of action. For example, in *Caldor, Inc. v. Bowden,* 330 Md. 632, 656, 625 A.2d 959 (1993), the Court recognized that, in order for a plaintiff to establish a claim for malicious prosecution, the plaintiff must prove, *inter alia,* that a criminal proceeding was instituted by the defendant against the plaintiff and the proceeding was terminated in favor of the accused.

Our research reveals that many jurisdictions have addressed the issue of whether a prior acquittal or nol pros is admissible in a subsequent civil case involving the same operative facts. Almost without exception, when the acquittal is not an element of the civil claim, these jurisdictions prohibit admission of an acquittal or a nol pros in a later civil proceeding involving the same or similar underlying conduct. *See, e.g., Rabon v. Great Southwest Fire Ins. Co.,* 818 F.2d 306, 309 (4th Cir.1987) ("We adopt and apply here the rule that a federal trial court commits reversible error when it permits the plaintiff in a suit for fire insurance proceeds to present evidence of his nonprosecution or acquittal on related criminal arson charges"); *McSweeney v. Utica Fire Ins. Co. of Oneida County N.Y.,* 224 F.2d 327, 328 (4th Cir.1955) (applying South Carolina law and stating: "Since the burden of proof on the moving party to establish the crucial facts is heavier in a criminal than in a civil case, and there is a dissimilarity of parties, it has generally been held that an acquittal in a criminal case is not admissible in a civil action as evidence of the innocence of the accused."); *United States v. Burns,* 103

F.Supp. 690, 691 (D.Md.) (In a case in which the insurance beneficiary was acquitted of murder of the insured, "records in criminal cases are not admissible in evidence in civil cases, although both [cases] arise from the same facts."), *aff'd,* 200 F.2d 106 (4th Cir.1952); *Morrison v. State,* 267 Ala. 1, 100 So.2d 744 (1957)("Verdicts in criminal cases are not admissible in civil cases arising out of the same transactions."); *Horn v. Cole,* 203 Ark. 361, 156 S.W.2d 787, 789 (1941)(involving a case in which the insurance beneficiary was acquitted of killing the insured, and stating: "[T]he record of the criminal cause is not competent evidence in the civil action."); *Carvajal v. Adams,* 405 So.2d 763, 764 (Fla.App.1981) (precluding evidence of prior acquittal on criminal charges arising out of the civil case), *cert. denied,* 412 So.2d 464 (Fla.1982); *Eggers v. Phillips Hardware Co.,* 88 So.2d 507, 507 (Fla.1956)(concluding that testimony by police officers that they did not arrest the defendant for violation of traffic laws was not admissible because "evidence of defendant's conviction or acquittal in a criminal proceeding is not admissible in a civil suit against the defendant arising out of the occurrence which formed the basis of the criminal charge against him" and evidence of an arrest is the first step towards disposition of a case); *State v. Dubose,* 152 Fla. 304, 11 So.2d 477, 481 (1943)("[A]n acquittal in a criminal prosecution does not constitute evidence of innocence in a subsequent civil action based upon the alleged criminal act, and is not admissible in favor of the accused in a civil action to prove that he was not guilty of the crime with which he was charged."); *C.L. Maddox, Inc. v. Royal Ins. Co. of America,* 208 Ill.App.3d 1042, 153 Ill.Dec. 791, 567 N.E.2d 749, 758 ("Evidence of an individual's prior acquittal in an earlier criminal proceeding is inadmissible in a subsequent civil action."), *appeal denied,* 139 Ill.2d 594, 159 Ill.Dec. 105, 575 N.E.2d 912 (1991); *State v. Roach,* 83 Kan. 606, 611, 112 P. 150, 152 (1910)(noting that, in an injunction action, evidence of a prior acquittal for selling intoxicating liquors was inadmissible because different standards of proof in criminal and civil trials make criminal verdicts inadmissible in a civil trial based on the same occurrence.); *Billy's Serv. v. American Ins. Co.,* 37 Mass.App.Ct.

584, 641 N.E.2d 713, 713 (1994) ("[E]vidence of an acquittal in a prior criminal trial is not admissible in a civil trial involving similar issues."), *review denied,* 419 Mass. 1102, 646 N.E.2d 409 (1995); *Elliott v. Mid–Century Ins. Co.,* 701 S.W.2d 462, 466 (Mo.App.1985) (Evidence of prior acquittal in criminal arson case not admissible in insured's civil action against insurer to cover the loss because of "inherent differences" between civil and criminal trials); *Penn. Turnpike Com. v. U.S. Fidelity & Guaranty Co.,* 412 Pa. 222, 194 A.2d 423, 426 (1963)("In the case of a judgment of acquittal or nolle prosequi, Pennsylvania has consistently followed the rule that the criminal judgment is not admissible as evidence to prove that the defendant did not do the act complained of."); *Bobereski v. Insurance Co. of Pa.,* 105 Pa.Super. 585, 161 A. 412, 415 (1932)(concluding that evidence of a nolle prosequi is inadmissible in a subsequent civil trial); *Tennessee Odin Ins. Co. v. Dickey,* 190 Tenn. 96, 228 S.W.2d 73, 74 (1950)(" 'The acquittal of the plaintiff upon an indictment ... is not entitled to any effect as evidence in a civil action, as an answer to the defense of [the crime], or as tending to show, that, in fact, the plaintiff did not commit the [crime].' "); *American General Fire and Cas. Co. v. McInnis Book Store, Inc.,* 860 S.W.2d 484, 487 (Tex.App.1993)("An acquittal in a criminal action is not ordinarily admissible evidence in a subsequent civil prosecution involving common fact issues."); *State v. Benavidez,* 365 S.W.2d 638, 641 (Tex.1963)("Ordinarily, acquittals in criminal actions are not admissible as evidence in subsequent civil proceedings involving common fact issues."); *Selected Risks Ins. Co. v. Dean,* 233 Va. 260, 355 S.E.2d 579, 582 (1987)(The trial court correctly excluded evidence concerning the disposition of the criminal maiming case in a subsequent civil suit to recover under the insurance policy.); *Hatch v. State Farm Fire & Cas. Co.,* 930 P.2d 382, 393 (Wyo.1997)("Evidence of an acquittal of criminal charges is not relevant in a subsequent civil trial relating to the same incident.").

The cases cited above provide a variety of sound reasons barring the admission of an acquittal or nol pros in a subse-

quent, related civil case involving the same underlying facts. We shall discuss a few of these cases.

We begin with a Fourth Circuit case, *Rabon v. Great Southwest Fire Ins. Co., supra,* 818 F.2d 306. There, when the insured sought to recover for a loss covered under a fire insurance policy, the insurer asserted the affirmative defense of arson. *Id.* at 307. Thus, the insurer had the burden of proving, by a preponderance of evidence, that the fire was an arson and that it was caused by the insured. *Id.*

At trial, the attorney for the insured argued to the jury, *inter alia,* that the state's dismissal of criminal charges against the insured demonstrated that the insurance company's denial of the claim was unreasonable, and that the insurer had manufactured the arson charges. *Id.* at 308. On appeal, the insured argued that any prejudice to the insurer was cured by the court's limiting jury instruction, advising that the alleged crime of arson was of "no concern" to the jurors. *Id.* at 309. The Fourth Circuit disagreed. It said that the "instruction did little to dispel the prejudicial impact of the irrelevant evidence and improper closing argument." *Id.* Moreover, in the Fourth Circuit's view, the "combined effect of highly improper jury argument by [counsel for the insured] and a pivotal and misleading jury instruction on the 'presumption of innocence' was sufficiently prejudicial that [the insurer] was entitled" to a new trial. *Id.* at 308.

What the Fourth Circuit said in remanding for a new trial is noteworthy: "[The insured's] closing argument was plainly calculated to appeal improperly to the passions and prejudices of the jury through incompetent, irrelevant, and misleading evidence." *Id.* at 309. Further, the court said, *id.:*

> We adopt and apply here the rule that a federal trial court commits reversible error when it permits the plaintiff in a suit for fire insurance proceeds to present evidence of his nonprosecution or acquittal on related criminal arson charges.... The reasons for this rule are easy to appreciate. First, such evidence goes directly to the principal issue before the jury and is highly prejudicial. Second, a prose-

cutor's decision not to prosecute and a jury's decision to acquit in a criminal trial are based on different criteria than apply in a civil proceeding. In particular, a prosecutor's decision to *nolle prosse* may take into account many factors irrelevant in a civil suit, such as the higher standard of proof required for a criminal conviction. In any event, a prosecutor's opinion whether the insured started the fire is inadmissible since based on knowledge outside his personal experience.

*Tennessee Odin Ins. Co. v. Dickey, supra,* 190 Tenn. 96, 228 S.W.2d 73 (1950), is also instructive. It involved an insured who was acquitted on arson charges in regard to his truck, and then sued his insurer to recover for his loss. The insurer's defense was that the insured had fraudulently procured the burning of his vehicle. *Id.* at 74. At trial, the insured was permitted to introduce evidence of his acquittal on charges that he willfully burned the truck for the purpose of defrauding his insurance company. *Id.* However, the trial court gave a limiting jury instruction, stating that "this proof could not be considered as evidence" that the insured did not burn his truck, but could be considered as to his credibility. *Id.*

Despite the limiting jury instruction, the appellate court reversed and remanded for a new trial. The Tennessee court focused on the irreparable prejudice to the insurer. Indeed, the court was "strongly convinced" that the introduction of the evidence of the acquittal might well have misled the jury to conclude that the insurer's "defense was false." *Id.* Thus, it concluded that evidence of the acquittal "resulted in greatly impairing if not destroying the only defense which the insurance company had." *Id.*

In reaching that result, the appellate court relied on key distinctions between criminal and civil proceedings. It said: "[T]he fact that the State was unable to prove '*beyond a reasonable doubt*' that [the insured] was guilty of the crime of arson was wholly inadmissible upon the same issue in the civil suit in which his guilt could be shown by a *preponderance* of the evidence." *Id.* Moreover, it noted that the criminal trial

"was an issue between the State and the plaintiff to redress a public wrong; while the present [civil] suit is to enforce a private right arising under contract." *Id.*

*Bobereski v. Insurance Co. of Pennsylvania, supra,* 105 Pa.Super. 585, 161 A. at 413, also provides guidance. There, after the state nol prossed charges of arson and insurance fraud lodged against the insured, the insured sought to use the *nol pros* in a breach of contract suit against the insurer. Concluding that the *nol pros* "was not competent evidence for any purpose," 105 Pa.Super. at 592, 161 A. 412, and recognizing that the admission of evidence of the *nol pros* gave the insurer little chance to convince the jury of the plaintiff's role in the arson, the appellate court ordered a new trial to ensure a jury verdict "free from any impressions, convictions or beliefs raised by incompetent evidence." *Id.* at 595, 161 A. 412.

The court recognized that a public prosecution serves a very different purpose from a private civil action. *Id.* at 593, 161 A. 412. Among other things, the parties are different and the " 'person wronged [civilly] is not chargeable with the conduct of the prosecution and therefore not affected by an acquittal.' " *Id.* (citation omitted). Further, the court explained:

> Laymen are not apt to make much distinction between a discharge by acquittal of a jury and a discharge by nol. pros. entered by the district attorney with leave of court, because the evidence was insufficient to convict. * * * The average juryman is not apt to consider that the parties to the civil prosecution and the criminal action were not the same; that the plaintiff or defendant, as the case may be, in a civil action had no control over the criminal case; that the degree of proof in the two issues was not the same; that in the criminal case the evidence of guilt of the defendant must be proved beyond a reasonable doubt, while in the civil suit it need only be established by a preponderance of the evidence.

*Id.* at 415 (internal citations omitted). The court added, *id.:*

> It is doubtful, whether after it was in evidence that the plaintiff had been discharged from criminal prosecution by

the court, on motion of the district attorney for lack of evidence to convict, [that] the defendant had a chance of convincing the jury that [the insured] was [involved] in the burning of her property. [The insurer] was entitled to the verdict of the jury ... free from any impressions, convictions or beliefs raised by incompetent evidence.

*Eggers v. Phillips Hardware Co.,* 88 So.2d 507 (Fla.1956), also provides us with insight. There, a police officer decided not to arrest a driver who struck a pedestrian. At the civil trial brought by the pedestrian against the driver, the trial court allowed the defendant to elicit the police officer's testimony regarding his decision not to arrest the defendant. The appellate court determined that the admission of the testimony constituted reversible error, as it contravened well-settled Florida law that evidence of an acquittal is not admissible in a subsequent civil suit arising out of the same occurrence. *Id.* at 507. The difference between criminal and civil proceedings, the court noted, "renders such evidence clearly not relevant or admissible." *Id.* at 508. Moreover, the court explained that the rule was equally applicable to an arrest and found that the error was not harmless. *Id.*

 Appellee's singular argument in favor of upholding the trial court is that no Maryland court has held that evidence of a prior nol pros is inadmissible under the circumstances of this case.[4] Carter seems to argue that because a nol pros is less relevant than a conviction, which is an affirmative finding of guilt, the reasons that justify the exclusion of evidence of a conviction are inapplicable to a nol pros. As appellant points out, "[t]his argument does not withstand scrutiny because admission of less relevant evidence strengthens the need for [its] exclusion."

In support of his position, appellee relies primarily on *Brown v. Allstate Insurance Co.,* 344 S.C. 21, 542 S.E.2d 723

---

4. As we have noted, an acquittal is admissible in a subsequent civil case when it is an element of the claim. But, that is not the situation in the case *sub judice.*

(2001). That case does not advance his cause. There, the appellate court found that the trial court's admission of evidence of Brown's "non-prosecution for arson was irrelevant and inadmissible...." *Id.* at 725. However, because the case was tried to the court, rather than to a jury, and there was no indication that the judge relied on the "incompetent evidence," the appellate court found the error harmless. *Id.* at 726.

That *Brown* was a non-jury trial is, of course, a fact of notable import. Indeed, it was that fact on which the *Brown* court relied in reaching its decision that the error was harmless. And, that fact makes *Brown* inapposite.

■ The cases discussed above convince us that the jury in the case *sub judice* easily could have misapprehended the meaning or significance of the nol pros of the charges against Carter. The central issue in the civil insurance case required the jurors to decide whether appellee's claim of loss was legitimate or, instead, whether there was merit to State Farm's defense that the claim was bogus. In a case in which appellee's conduct in regard to his insurance claim was at the center of the case, evidence of the State's dismissal of criminal charges involving the same underlying conduct necessarily took on added importance. Evidence of the nol pros may well have led the jury to believe that appellee was exonerated of any wrongdoing in connection with his insurance claim, thereby rendering the insurer liable on the contract claim. Put another way, the jury, a group of lay persons, may have believed that the State would not have dismissed the charges against appellee if he had actually engaged in the wrongdoing as alleged by State Farm. That conclusion would have deprived State Farm of a fair assessment by the jury of the evidence. It follows that because the issue of Carter's alleged wrongdoing was the basis of State Farm's defense, State Farm was unfairly prejudiced by the evidence of the nol pros.

We do not suggest that appellee committed fraud in connection with his insurance claim. But, a conclusion that he did not do so cannot rest on the fact that his criminal case was dismissed. Whatever the basis for the prosecutor's decision

not to proceed with the criminal prosecution, that decision was not relevant to the civil case.

The different levels of proof that attach to criminal and civil proceedings are an important component of our analysis. To illustrate, in a criminal assault case, the State's failure to adduce evidence of guilt beyond a reasonable doubt would result in an acquittal. Yet, that same evidence might well be sufficient in a civil assault case in which the burden of proof is the preponderance standard. For much the same reason, "an earlier acquittal on a criminal charge would not collaterally estop a subsequent civil forfeiture proceeding notwithstanding the fact that the forfeiture would depend upon the establishment of facts already decided in the defendant's favor in the criminal trial." *Butler v. State,* 91 Md.App. 515, 533, 605 A.2d 186 (1992), *aff'd,* 335 Md. 238, 643 A.2d 389 (1994); *see United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984)(A gun owner's acquittal on criminal charges involving firearms does not prohibit a subsequent civil forfeiture regarding those same firearms); *One Lot Emerald Cut Stones & One Ring v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972)(An acquittal of underlying criminal charges resolves no issues in the subsequent forfeiture action); *Cf. Lai v. Sagle,* 373 Md. 306, 319–323, 818 A.2d 237 (2003) (concluding that, in a medical malpractice case, evidence of prior malpractice is inadmissible as irrelevant or excessively prejudicial; Court analogized to the rule barring evidence of prior arrests in a criminal trial).

"Since an acquittal might merely mean that the offense was not proved beyond all reasonable doubt, the acquittal is of no relevance in a civil proceeding where the fact need only be proved by the greater weight of the evidence." *C.L. Maddox, supra,* 153 Ill.Dec. 791, 567 N.E.2d at 758 (citation omitted). A nol pros is at least one step removed; it represents a decision by a prosecutor not to move forward with a criminal case. As appellant correctly observes: "There are countless reasons why a prosecutor may choose to *nolle pros.* a criminal case, but ultimately the decision is based upon the subjective

opinion of the prosecutor, which has no relevance in a civil trial."

In view of the foregoing, we shall vacate the judgment and remand for a new trial. In light of our disposition, we need not address Carter's cross-appeal.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. CASE REMANDED FOR A NEW TRIAL. COSTS TO BE PAID BY APPELLEE.**