729 S.E.2d 896

**Joe E. MILLER, Commissioner of the West Virginia Division of Motor Vehicles, Petitioner**

v.

**John B. EPLING, Respondent.**

No. 11–0353.

Supreme Court of Appeals of West Virginia.

Submitted April 11, 2012.

Decided June 21, 2012.

---

Darrell V. McGraw, Jr., Esq., Attorney General, Scott Johnson, Esq., Senior Assistant Attorney General, Elaine L. Skorich, Assistant Attorney General, Charleston, WV, for Petitioner.

Gregory W. Sproles, Esq., Gregory W. Sproles, PLLC, Summersville, WV, for Respondent.

BENJAMIN, Justice:

This appeal by Joe E. Miller, Commissioner of the West Virginia Division of Motor Vehicles (hereinafter referred to as "Commissioner Miller"), the petitioner herein, challenges a January 27, 2011, order of the Circuit Court of Nicholas County that remanded the case to the Office of Administrative Hearings for a new full evidentiary hearing, with directions to perform a proper analysis under *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996) and *Choma v. WV Division of Motor Vehicles*, 210 W.Va. 256, 557 S.E.2d 310 (2001). Herein, Commissioner Miller argues that this Court should overrule *Choma*. Commissioner Miller also argues that the circuit court erred in finding that the Commissioner did not perform a proper analysis under *Muscatell*, and in remanding the case to the Office of Administrative Hearings rather than the Commissioner. For the reasons expressed below, we affirm in part and reverse in part the January 27, 2011, order of the circuit court and remand the matter for further proceedings consistent with this opinion. In so ruling, we expressly overrule Syllabus Point 3 of *Choma*.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On August 16, 2009, Deputy R.C.Hicks and Deputy Caprio [1] observed a car traveling on Church Street in Summersville, West Virginia, at a high rate of speed. Deputy Caprio pursued the car and stopped it.[2] Deputy Hicks followed and arrived while Deputy Caprio was processing Mr. Epling's information. It is disputed whether Mr. Epling was still in the vehicle at the time Deputy Hicks arrived at the scene. While speaking to Mr. Epling, Deputy Hicks determined that Mr. Epling's speech was clear and that he was not unsteady, but that Mr. Epling smelled of alcohol. Mr. Epling admitted to consuming four or five beers. Deputy Hicks administered three standard field sobriety tests. Mr. Epling failed the walk and turn test and the horizontal gaze nystagmus test, but passed the one-leg stand test. Mr. Epling refused a preliminary breath test. Thereupon, Deputy Hicks arrested Mr. Epling for driving a motor vehicle in the State of West Virginia while under the influence of alcohol. Deputy Hicks then administered a secondary

---

1. The record does not contain a reference to Deputy Caprio's first name.

2. The officers believed that the car was being driven by respondent, John Epling. However, Mr. Epling disputes that he was the driver of the vehicle.

breath test to Mr. Epling, which revealed that Mr. Epling had a blood alcohol content of .111%. The DUI charge against Mr. Epling was subsequently dismissed five days later on August 21, 2009.

Thereafter, on September 29, 2009, Commissioner Miller issued an order revoking Mr. Epling's privilege to drive a motor vehicle. Mr. Epling requested an administrative hearing, which was held on May 21, 2010. Following the administrative hearing, the hearing examiner proposed that Commissioner Miller conclude, as a matter of law, that Mr. Epling violated W. Va.Code § 17C–5–2 (2008) by driving a motor vehicle in West Virginia while under the influence of alcohol. Specifically, the hearing examiner noted that while Mr. Epling testified that as a medical student he was familiar with the horizontal gaze nystagmus test, there was no evidence that this was the same as the training that Deputy Hicks received as a law officer. The hearing examiner further explained that he did not credit the testimony of Mr. Epling's witness that he was not intoxicated because the witness offered no reason to believe this other than knowing Mr. Epling for most of his life. Finally, the hearing examiner did not credit the dismissal of the criminal charges for DUI because there was no evidence as to why the Prosecuting Attorney dismissed the charges. Commissioner Miller entered a final order on October 5, 2010, adopting the Findings of Fact and Conclusions of Law proposed by the hearing examiner and ordered that Mr. Epling's privilege to drive a motor vehicle be revoked for a period of six months and thereafter until the completion of all obligations for reinstatement.

Thereafter, Mr. Epling filed a petition for judicial review in the Circuit Court of Nicholas County. In his petition, Mr. Epling alleged that Commissioner Miller erred in failing to give weight to the dismissal of the underlying criminal case in this matter pursuant to *Choma*. Mr. Epling also asserted, *inter alia*, that Commissioner Miller erred in failing to consider his testimony and the testimony of a witness called on his behalf and in failing to make a reasoned and articulate decision, capable of judicial review, by failing

to properly consider such testimony and giving it appropriate weight under *Muscatell*. Following a hearing on the petition, the circuit court entered an order on January 27, 2011, remanding the case to the Office of Administrative Hearings for a full evidentiary hearing, with directions to issue a new order regarding the revocation of Mr. Epling's drivers license and to make a proper analysis under *Muscatell* and *Choma* in regard to any issues raised at the administrative level. Following the circuit court's order, Commissioner Miller filed the instant appeal.

## II.

## STANDARD OF REVIEW

This Court has previously established the standards for our review of a circuit court's order deciding an administrative appeal as follows:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996). In addition,

> [i]n cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law de novo.

*Id.,* Syl. Pt. 2. Guided by these principles, we proceed to review the merits of the appeal before us.

## III.

## DISCUSSION

In his first assignment of error, Commissioner Miller urges this Court to overrule *Choma*. In *Choma,* the Appellant filed an appeal from a circuit court order affirming an administrative decision of the Commissioner of Motor Vehicles revoking the Appel-

lant's license for six months for driving under the influence of alcohol, pursuant to the provisions of W. Va.Code § 17C–5A–2(I) (2000). *Id.* at 258, 557 S.E.2d at 312. Ms. Choma alleged, *inter alia,* that the Commissioner erred in suspending her license because she was acquitted in her DUI criminal proceeding. *Id.* at 259–260, 557 S.E.2d at 313–314. She argued that the adjudication of the DUI issue in the criminal context was *res judicata* on that issue in the administrative context. *Id.* at 260, 557 S.E.2d at 315. The Commissioner alternatively argued that the burdens of proof were different in the administrative and criminal forum and that this Court had regularly up-held a "two-track" approach of separate driver's license proceedings and criminal DUI proceedings. *Id.* at 260, 557 S.E.2d at 315.

In deciding that the Commissioner's decision arbitrarily and capriciously discredited and disregarded Ms. Choma's testimony and was clearly contrary to the weight of the evidence, this Court, held that

> In administrative proceedings under W. Va.Code 17C–5A–1 *et seq.,* the commissioner of motor vehicles must consider and give substantial weight to the results of related criminal proceedings involving the same person who is the subject of the administrative proceeding before the commissioner, when evidence of such results is presented in the administrative proceeding.

*Id.,* Syl. Pt. 3. The *Choma* majority reasoned that although this Court had traditionally upheld a statutory two-track approach of separate DUI administrative driver's license proceedings and criminal DUI proceedings,[3] the separate procedures were nevertheless connected and intertwined in important ways. For example, it was noted that criminal arrests for DUI trigger license suspensions, *W.Va.Code,* 17C–5A–1(b)[1994]; and a criminal conviction for DUI is in itself grounds for license suspension. *W.Va.Code,* 17C–5A–1a (1994). In creating a symmetry between civil and criminal proceedings allegedly grounded in due process, the opinion

succinctly stated that "aside from all else, due process means fundamental fairness." *Choma,* 210 W.Va. at 260, 557 S.E.2d at 314 (*quoting Pinkerton v. Farr,* 159 W.Va. 223, 230, 220 S.E.2d 682, 687 (1975)).

Since *Choma* was decided in 2001, this Court, although not confronted with the issue directly at the time, more recently noted the continuing validity of Syllabus Point 3 in *Ullom v. Miller, Commissioner of WV DMV,* 227 W.Va. 1, n. 12, 705 S.E.2d 111, n. 12 (2010),

> [w]e observe that Syllabus Point 3 of *Choma* would appear to conflict with this Court's time-honored precedent stating "[i]t is the general rule that a judgment of acquittal in a criminal action is not *res judicata* in a civil proceeding which involves the same facts." Syllabus, *Steele v. State Road Commission,* 116 W.Va. 227, 179 S.E. 810 (1935). In view of our disposition of this issue herein, we need not now consider the continued viability, if any, of Syllabus Point 3, of *Choma.*

Because the issue is now squarely before this Court in the instant appeal, it is necessary to now determine whether *Choma* misapplied our prior law and whether Syllabus Point 3 should be overruled.

Specifically, Commissioner Miller argues that because *Choma* was an incorrect statement of law, failed to contain analysis of an important issue, is contrary to reason, incorrectly interpreted or misapplied laws or legal principles, contradicted a long tradition and prior case law, has proved unworkable, has been outstripped by more recent authority, and failed to reflect adequate consideration of the wider implications of its opinion, *Choma* should be overruled. Commissioner Miller argues that *Choma* does not recognize that there are compelling reasons for treating convictions and acquittals differently. Because a conviction proves an act was committed, but an acquittal does not prove an act was not committed, Commissioner Miller asserts that it is rational and sound to treat convictions and acquittals differently. Additionally, Commissioner Miller contends that

---

3. *See, e.g., Wagoner v. Sidropolis,* 184 W.Va. 40, 43, 399 S.E.2d 183, 186 (1990) (a "clear statutory demarcation [has been recognized] between

the administrative issue on a suspension and the criminal issue on a charge of driving while under the influence.")

an acquittal is merely that the prosecutor failed to prove guilt beyond a reasonable doubt, a high standard. For this reason, he argues that the vast majority of jurisdictions have held that evidence of an acquittal is not relevant in a license revocation proceeding because acquittal does not prove and is not relevant to, innocence. Additionally, in situations when the prosecutor decides not to pursue the DUI charge, Commissioner Miller asserts this is not always reflective of the belief in the defendant's innocence but may be based upon failures of proof which will reach the "beyond a reasonable doubt" standard. Commissioner Miller argues that *Choma* places the Division at the mercy of the prosecutor's decisions.

In response, Mr. Epling argues that *Choma* was a well reasoned decision which required that the administrative decision maker give substantial weight to the disposition of the underlying criminal charges when the charges involved the same issue, and neither the Petitioner nor the Office of Administrative Hearings are bound to dismiss the administrative revocation of a driver's license when the underlying criminal charges have been dismissed.

Our jurisprudence has long held that "[i]t is the general rule that a judgment of acquittal in a criminal action is not *res judicata* in a civil proceeding which involves the same facts." Syllabus, *Steele v. State Road Commission*, 116 W.Va. 227, 179 S.E. 810 (1935). In *Steele,* the petitioner was acquitted of a charge of operating an automobile on a public road while intoxicated under W. Va.Code § 17–8–25 (1935). *Id.* at 228, 179 S.E. at 811. He was later arraigned before the state road commission under W. Va.Code § 17–6–28 (1935) for operating a vehicle in a manner endangering the lives and property of those using the public highways. *Id.* at 228, 179 S.E. at 811. As a defense to the commissioner's charge, the petitioner introduced evidence of his acquittal on the criminal charge and argued that his acquittal barred any other proceeding against him based on the same evidence, and that the commission lost its jurisdiction to proceed against him once evidence of the acquittal was introduced. *Id.* at 228, 179 S.E. at 811. The commission ignored the acquittal, heard the evidence, and revoked petitioner's license to operate an automobile. On appeal, in noting that the two charges against the petitioner were not identical in nature, this Court adhered to the majority rule which holds that "when a statute provided both a forfeiture in rem and a personal penalty for the same misconduct, the proceeding in rem stands independent of, and wholly unaffected by, any criminal proceeding in personam." *Id.* at 229, 179 S.E. at 811. Consequently, this Court found that the acquittal did not affect the jurisdiction of the commission. *Id.* at 229, 179 S.E.2d at 811.

Again noting the differing standards of proof between administrative license revocation proceedings and criminal DUI proceedings, this Court later observed in 1978 that "[t]here is a clear statutory demarcation between the administrative issue on a suspension and the criminal issues on a charge of driving while under the influence." *Jordan v. Roberts*, 161 W.Va. 750, 757, 246 S.E.2d 259, 263 (1978). In *Jordan,* an appeal concerning whether the administrative proceedings for suspension of a driver's license under implied consent law violated the state's due process clause, this Court discussed the difference in issues and levels of proof required between the administrative and criminal proceeding, and stated

> In the former, the key issues are the reasonable grounds to believe the licensee was driving while under the influence of intoxicating liquor and whether he refused the test. A preponderance of evidence is sufficient for proof of these issues at the administrative hearing. In the criminal trial, the key issue is whether he was driving while under the influence of intoxicating liquor. Because of the possibility of fines and imprisonment, proof beyond a reasonable doubt is required.

*Id.*, 161 W.Va. at 757–58, 246 S.E.2d at 263. Since then, this Court has "consistently held, license revocation is an administrative sanction rather than a criminal penalty." *State ex rel. DMV v. Sanders*, 184 W.Va. 55, 58, 399 S.E.2d 455, 458 (1990). *See Wagoner v. Sidropolis*, 184 W.Va. 40, 43, 399 S.E.2d 183, 186 (1990) (the administrative enhancement provisions of W. Va.Code § 17C–5A–2 (1981)

are triggered by the statement of an arresting officer rather than the guilty plea of an offender. The guilty plea is only relevant to criminal sanctions which may result. Administrative actions and criminal sanctions are independent lines of inquiry which must not be confused or integrated.); *Shingleton v. City of Romney*, 181 W.Va. 227, 229, 382 S.E.2d 64, 66 (1989) ("[t]he administrative sanctions are separate and distinct from criminal penalties . . ."); *Shell v. Bechtold*, 175 W.Va. 792, 796, 338 S.E.2d 393, 397 (1985) (license revocation proceedings are not penal in nature); *Stalnaker v. Roberts*, 168 W.Va. 593, 597, 287 S.E.2d 166, 168 (1981); *See also Carroll v. Stump*, 217 W.Va. 748, 619 S.E.2d 261 (2005) ("administrative license revocation proceedings for driving a motor vehicle under the influence . . . are proceedings separate and distinct from criminal proceedings arising from driving a motor vehicle under the influence . . .").

Additionally, evidence of a criminal acquittal should not be relevant in a civil proceeding based on the same act because an acquittal does not prove innocence. In *Montgomery v. State Police*, 215 W.Va. 511, 515–16, 600 S.E.2d 223, 227–28 (2004), this Court considered an argument of an appellant who asserted that where a "not guilty" finding is returned, an accused is exonerated from the crime that he was charged with and the taint of the initial allegation is effectively removed. We disagreed. We noted that the acquittal resulted from evidentiary difficulties rather than a showing that the appellant "was shown not to have committed the acts upon which the criminal offense was based." *Id.* at 516, 600 S.E.2d at 228. This Court then recognized that "[t]here are many reasons, including a higher burden of proof and stricter evidentiary rules, that may affect whether a criminal defendant is convicted." *Id.* at 516, 600 S.E.2d at 228. *See also State v. Miller*, 194 W.Va. 3, 10, 459 S.E.2d 114, 121 (1995) (before issue or claim preclusion is applicable, "not only the facts but also the legal standards and procedures used to assess them must be similar.").

Additionally, many jurisdictions have held that evidence of an acquittal is not relevant in a subsequent civil proceeding based on the exact same acts because the acquittal does not prove innocence. *See generally State Farm Fire & Cas. Co. v. Carter*, 154 Md.App. 400, 411, 840 A.2d 161, 168 (2003)("Our research reveals that many jurisdictions have addressed the issue of whether a prior acquittal or *nol pros* is admissible in a subsequent civil case involving the same operative facts. Almost without exception, when the acquittal is not an element of the civil claim, these jurisdictions prohibit admission of an acquittal or a nol pros in a later civil proceeding involving the same or similar underlying conduct."); *Williams v. North Dakota State Highway Comm'r*, 417 N.W.2d 359, 360 (N.D.1987) (administrative license revocation proceedings are civil in nature, separate and distinct from the criminal proceedings which may ensue from an arrest, . . . dismissal or acquittal of a related criminal charge is irrelevant to the disposition of the administrative proceedings.); *Commonwealth v. Crawford*, 121 Pa.Cmwlth. 613, 616, 550 A.2d 1053, 1054 (1988) (an acquittal of the criminal charge of driving under the influence is of no consequence to the outcome of the civil proceeding.); *Boston Housing Auth. v. Guirola*, 410 Mass. 820, 827 n. 9, 575 N.E.2d 1100, 1105 n. 9 (1991) ("Although due process may require the application of issue preclusion to bar the relitigation of a suppression order in a subsequent criminal proceeding between the same parties, there is no such requirement where the subsequent proceeding is civil."); *Joyner v. Garrett*, 279 N.C. 226, 238, 182 S.E.2d 553, 562 (internal citation and quotation omitted), *reh'g denied*, 279 N.C. 397, 183 S.E.2d 241 (1971) (it is well established that the same motor vehicle operation may give rise to two separate and distinct proceedings. One is a civil and administrative licensing procedure instituted by the Director of Motor Vehicles to determine whether a person's privilege to drive is revoked. The other is a criminal action instituted in the appropriate court to determine whether a crime has been committed. Each action proceeds independently of the other and the outcome of one is of no consequence to the other.).

Moreover, the instant case involves a decision by a prosecuting attorney to dismiss charges, not an acquittal. Thus, this places

the Division of Motor Vehicles at the mercy of the prosecutor's decisions regarding criminal charges. In *In re McKinney*, 218 W.Va. 557, 562, 625 S.E.2d 319, 324 (2005), this Court observed that

> the purpose of speedily removing intoxicated drivers from our public roadways would be greatly frustrated if the Division's revocation powers were totally dependent on the discretion of local prosecutors in choosing how to charge drunk drivers and whether to accept pleas to lesser charges—a discretion based primarily on the exigencies of the criminal justice system, not the protection of innocent drivers.

*Id.* Additionally, "[c]ases are dismissed for a variety of reasons, many of which are unrelated to culpability." *United States v. Marrero–Ortiz*, 160 F.3d 768, 775 (1st Cir.1998). Indeed, the burden of proof necessary to convict a defendant of a criminal offense is beyond a reasonable doubt, a burden which is substantially higher than the preponderance of the evidence burden required in civil actions. Thus, an acquittal, or in this case, a dismissal of charges by a prosecutor, cannot be reliably said to represent anything other than a determination that the State could not prove its case beyond a reasonable doubt.

For all these reasons, and in accord with our prior law and the law generally recognized by the vast majority of jurisdictions, we now hold that when a criminal action for driving while under the influence in violation of W. Va.Code § 17C–5–2 (2008) results in a dismissal or acquittal, such dismissal or acquittal has no preclusive effect on a subsequent proceeding to revoke the driver's license under W. Va.Code § 17C–5A–1 *et seq.* Moreover, in the license revocation proceeding, evidence of the dismissal or acquittal is not admissible to establish the truth of any fact. In so holding, we expressly overrule Syllabus Point 3 of *Choma v. West Virginia Division of Motor Vehicles*, 210 W.Va. 256, 557 S.E.2d 310 (2001).

Turning to the next assignment of error, Commissioner Miller asserts that the circuit court erred in finding that he did not perform a proper analysis under *Muscatell*. In Syllabus Point 6 of *Muscatell*, this Court held:

> [w]here there is a direct conflict in the critical evidence upon which an agency proposes to act, the agency may not elect one version of the evidence over the conflicting version unless the conflict is resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering its decision capable of review by an appellate court.

In the instant case, Mr. Epling argued in his petition for judicial review that the hearing examiner did not perform a reasoned and articulate *Muscatell* analysis in the Commissioner's final order revoking his license. Specifically, Mr. Epling contended that the hearing examiner had summarily dismissed his argument regarding the lack of evidence of who was driving the vehicle by merely finding that Mr. Epling was driving. Mr. Epling contended that both he and a witness called on his behalf testified that at the time both law enforcement officers arrived where his vehicle was located, all of the occupants were out of the vehicle, and that this evidence was unrebutted by the arresting officer in the record. Mr. Epling claimed that the hearing examiner's failure to address this issue justified the circuit court's remand. Mr. Epling also argued that the hearing examiner failed to properly consider the testimony of Mr. Epling regarding the administration of the horizontal gaze nystagmus test and the walk and turn test. Mr. Epling contended that he rebutted the evidence of the arresting officer that he failed the horizontal gaze nystagmus test when he testified that the test was improperly conducted. Mr. Epling asserted that the hearing examiner's only analysis of the evidence was to simply find, without evidence being presented, that the arresting officer performed the test in the manner in which he had been trained. Additionally, Mr. Epling contended that the hearing examiner ignored his testimony that he performed the walk and turn test exactly as he had been instructed and did not address the conflict between his testimony and the allegedly conclusory statement of the arresting officer that Mr. Epling simply failed the test. Likewise, Mr. Epling argued that the hearing examiner ignored the evidence that he was walking normal and his speech

was clear, and also failed to address whether the investigating officer had reasonable grounds to stop and arrest him because the officer allegedly admitted during cross-examination that this vehicle was not exceeding the twenty-five mile an hour speed limit.

At the hearing before the circuit court regarding Mr. Epling's petition for judicial review, the circuit court referred to page seven of Commissioner Miller's order and found that Commissioner Miller did not conduct a proper *Muscatell* analysis explaining the evidence that was considered and the weight and credibility given to each witness that testified. Accordingly, the circuit court remanded the case to the Office of Administrative Hearings on all issues.

Herein, Commissioner Miller argues that the circuit court erred in requiring the Division to provide a more detailed decision weighing all of the evidence that was considered and explaining the specific credibility determinations that it made because *Muscatell* only requires a hearing examiner to explain why he or she chose to believe a witness whose own testimony is internally inconsistent and conflicting. Commissioner Miller contends that an extended analysis under *Muscatell* is not required in a situation like the present case, where a conflict arose between the testimony of two separate witnesses. Commissioner Miller asserts that this latter situation is a mere credibility determination, and the hearing examiner is not required to make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

We disagree with Commissioner Miller's contentions and find that Syllabus Point 6 of *Muscatell* cannot be interpreted so narrowly. In *Muscatell*, the petitioner had been arrested by a police officer who had received a tip, the source of which the officer did not know, to be on lookout for a vehicle with a description matching that of the petitioner's. 196 W.Va. 588, 598, 474 S.E.2d 518, 528. Petitioner was charged with driving under the influence and his license was revoked. The petitioner requested an administrative hearing and his suspension was affirmed. *Id.*

The circuit court subsequently upheld the revocation. On appeal, this Court reviewed the record to determine whether the hearing examiner's conclusion that the officer had a reasonable suspicion to stop the vehicle was supported by the evidence, and whether a conflict in the arresting officer's testimony was observed. *Id.* Under direct examination the trooper testified that he did observe appellee's vehicle briefly straddling or crossing the centerline. Upon cross examination, however, the trooper testified that the information upon which he relied at the time of the stop was limited to the information contained in an anonymous tip. *Id.* Nothing in the findings of fact of the Commissioner revealed how he resolved this conflict in the testimony of the trooper in favor of the direct testimony. The Court also found that there was no separate evaluation of the evidence by the hearing examiner who observed the demeanor of the witness on this critical issue. *Id.*

Noting the lack of a sufficiently articulate decision setting forth the underlying evidentiary facts by which the agency arrived at its conclusion, this Court reiterated:

> We have said, with respect to decisions of administrative agencies following from findings of fact and conclusions of law proposed by opposing parties, that the agency must rule on the issues raised by the opposing parties with sufficient clarity to assure a reviewing court that all those findings have been considered and dealt with, not overlooked or concealed. *See, St. Mary's Hospital v. State Health Planning and Development Agency*, 178 W.Va. 792, 364 S.E.2d 805 (1987). We have also said that in requiring an order by an agency in a contested case to be accompanied by findings of fact and conclusions of law, "the law contemplates a reasoned, articulate decision which sets forth the underlying evidentiary facts which lead the agency to its conclusion...." Syl. pt. 2, in part, *Citizens Bank v. W. Va. Board of Banking and Financial Institutions*, 160 W.Va. 220, 233 S.E.2d 719 (1977). The purpose of these rules is not to burden an administrative agency with proving or recording the obvious. The purpose is to allow a reviewing

court (and the public) to ascertain that the critical issues before the agency have indeed been considered and weighed and not overlooked or concealed. Indeed, a reviewing court cannot accord to agency findings the deference to which they are entitled unless such attention is given to at least the critical facts upon which the agency has acted.

*Muscatell v. Cline*, 196 W.Va. at 598, 474 S.E.2d at 528. Although the facts of *Muscatell* involved a direct conflict in the testimony of only one witness, and not the disputed testimony of two separate witnesses, as in the present case, there remains an equal necessity for the Commissioner to rule on the issues raised by the opposing parties with sufficient clarity to assure the reviewing court that all those findings have been considered. A sufficiently articulate decision setting forth the underlying evidentiary facts which lead the agency to its conclusion is crucial for purposes of meaningful appellate review.

In the case before us, the record reveals that the hearing examiner failed to make a thoroughly reasoned analysis capable of proper judicial review relating to the testimony presented by the arresting officer and Mr. Epling regarding, *inter alia*, the various field sobriety tests which were administered and who was driving the vehicle in question. Because *Muscatell* requires that a conflict in critical evidence be resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering a decision capable of review by an appellate court, we find that the circuit court's decision to remand the matter for a full evidentiary hearing was appropriate. Accordingly, we affirm the circuit court's ruling on this issue.

Lastly, Commissioner Miller's final assignment of error alleges that the circuit court also erred in remanding the matter to the Office of Administrative Hearings instead of directly back to the Commissioner. Specifically, Commissioner Miller asserts that only the Commissioner has subject matter jurisdiction to adjudicate this case. West Virginia Code § 17C–5C–5 (2010) pertains to the transfer of the Commissioner's revocation authority to the Office of Administrative Hear-

ings. It provides, in pertinent part, the following:

(a) In order to implement an orderly and efficient transition of the administrative hearing process from the Division of Motor Vehicles to the Office of Administrative Hearings, the Secretary of the Department of Transportation may establish interim policies and procedures for the transfer of administrative hearings for appeal from decisions or orders of the Commissioner of the Division of Motor Vehicles denying, suspending, revoking, refusing to renew any license or imposing any civil money penalty for violating the provisions of any licensing law contained in chapters, seventeen-A, seventeen-B, seventeen-C, seventeen-D and seventeen-E of this code, currently administered by the Commissioner of the Division of Motor Vehicles, no later than October 1, 2010.

(b) On the effective date of this article, all equipment and records necessary to effectuate the purposes of this article shall be transferred from the Division of Motor Vehicles to the Office of Administrative Hearings: *Provided*, That in order to provide for a smooth transition, the Secretary of Transportation may establish interim policies and procedures, determine how equipment and records are to be transferred and provide that the transfers provided for in this subsection take effect no later than October 1, 2010.

Commissioner Miller contends that W. Va. Code § 17C–5A–5 specifically empowers the Secretary of Transportation to establish interim policies and procedures for the transfer of administrative hearings for appeals from the decisions or orders of the Commissioner of the Division of Motor Vehicles to the Office of Administrative Hearings. As such, the Secretary of Transportation designated Jill Dunn, Esquire, as his designee to fulfill the Secretary's obligation under W. Va.Code § 17C–5–1 *et seq.* Commissioner Miller argues that Ms. Dunn established an interim policy by way of a June 10, 2010 memorandum that the Commissioner would retain jurisdiction over pre-June 11, 2010, incidents. Accordingly, Commissioner Miller contends that because the incident in this case predat-

ed June 11, 2010, the Commissioner, not the Office of Administrative Hearings, has jurisdiction to hear the matter on remand.

In response, Mr. Epling argues that on June 11, 2010, W. Va.Code § 17C–5C–3 became effective. Thus, he contends that from and after this date, the Commissioner no long had jurisdiction to conduct hearings or decide matters relating to the revocation of a person's drivers license. Mr. Epling asserts that the statutes which were in effect at the time of the initial revocation of his driver's license relating to the entity which decides the issues no longer have any validity and no longer exist for the purpose of hearing matters relating to license revocation. Mr. Epling contends that if the legislature had intended to require or allow the petitioner to conduct hearings for offenses which occurred prior to June 11, 2010, it could have done so. By conferring jurisdiction only on the Office of Administrative Hearings, Mr. Epling asserts that the legislature clearly intended that this office have exclusive jurisdiction to decide all cases after the enactment of W. Va.Code § 17C–5C–3.

This Court was recently confronted with this same argument in *Miller v. Smith*, 229 W.Va. 478, 729 S.E.2d 800 (2012). In resolving this issue, this Court held the following in syllabus point 3,

> The Secretary of Transportation's May 17, 2010, appointment of a designee to fulfill the statutory obligations regarding an orderly transition of jurisdictional authority from the Department of Motor Vehicles to the Office of Administrative Hearings was an appropriate exercise of discretionary power and in full compliance with West Virginia Code §§ 17C–5C–3 and 17C–5C–5 (2010).

*Miller*, 229 W.Va. 478, 729 S.E.2d 800. By virtue of this discretionary power, the Secretary of Transportation designated Jill Dunn, Esquire, as his designee to fulfill the Secretary's obligation under W. Va.Code § 17C–5C–5 *et seq.* Pursuant to this appointment, Ms. Dunn established an interim policy by way of a June 10, 2010 memorandum that the Commissioner would retain jurisdiction over pre-June 11, 2010, incidents. In this particular case, the incident giving rise to this appeal occurred on August 16, 2009, and thus, it did in fact pre-date the June 11, 2010, cut-off date set forth in Ms. Dunn's memorandum. Because the Commissioner has retained jurisdiction of all cases pre-dating June 11, 2010, we find it appropriate to remand the matter back to Commissioner Miller for a new evidentiary hearing to be conducted pursuant to the guidelines discussed above. Accordingly, we reverse the circuit court's remand of the case to the Office of Administrative Hearings.

### IV.

### CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the January 27, 2011, order of the Circuit Court of Nicholas County, and remand the case to the circuit court for further proceedings consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**